### BAYLEY & SONS, Inc., v. KRICH.

(District Court, D. New Jersey. March 6, 1920.)

1. **Patents ⊚⇒312(3)—Evidence sufficient to show novelty, etc., of design.**
   In suit for infringement of a design patent covering a lighting fixture, evidence *held* sufficient to show that the design was new, produced a pleasing impression, imparted a sense of uniqueness in character, and that it created an enlarged demand for the goods and attained great popularity.

2. **Patents ⊚⇒328—Design for lighting fixture valid and infringed.**
   The Bayley design patent, No. 49,593, for a lighting fixture, *held* valid and not anticipated, and also infringed.

3. **Patents ⊚⇒252—Slight deviation, not detected by ordinary observation, does not prevent infringement.**
   A slight deviation in a line, which could be pointed out by measurements of an expert, but not detected by the observation of the general public, does not avoid infringement of a design patent.

4. **Patents ⊚⇒312(3)—Evidence sufficient to show infringement after notice.**
   In a suit for infringement of a design patent covering a lighting fixture, evidence *held* to show infringement by defendant, after notice to him that the fixture sold by him was an infringement.

In Equity. Suit by Bayley & Sons, Incorporated, against Harry Krich, trading as the Krich Light Company. Decree for plaintiff.

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Wicoff & Lanning, of Trenton, N. J. (Dodson & Roe, of New York City, of counsel), for plaintiff.

Warner & Warner, of Newark, N. J., for defendant.

LYNCH, District Judge. The bill of complaint alleges an infringement on the part of the defendant of United States design letters patent No. 49,593, covering a lighting fixture known as "Bayley's Equalite." It appears that in a proceeding brought by the plaintiff against the Standard Art Glass Company et al. in the Southern district of New York the patent in suit was declared valid, but this decision was reversed by the Circuit Court of Appeals, Second Circuit. 249 Fed. 478, 161 C. C. A. 436. I quote from the opinion of Judge Hough of the Circuit Court of Appeals (the underlining being mine):

"There are, however, other design patents issued to other inventors, relating to the shapes of canopies and bowls for electric lights, and antedating the one in suit, which in our opinion prevent the discovery of any invention in the patent at bar. It is urged in support of the decree below that the novelty of a design is to be tested as a whole, and that invention is persuasively shown by the commercial success of 'Equalite.' Undoubtedly a design must be viewed in its entirety, its effect is optical, and it can no more be tested piecemeal than can a picture (Dobson v. Dornan, 118 U. S. 10, 6 Sup. Ct. 946, 30 L. Ed. 63) ; but novelty is not invention, nor can aid be found in the sales of 'Equalite.' That word covers the light and the fitting thereof, all the material as fastened together; *and the evidence wholly fails to show whether success is due to the mechanical excellence of the whole article, or the pleasing shape of its 'canopy and bowl,'* which (as shown above) has no necessary connection with the mechanics of the contrivance. To ascertain whether it required invention to conceive and produce a plainly ribbed bell-shaped canopy proximately surmounting a hemispherical bowl, we have considered the design patents below noted, and applied rules of decision often and lately stated by this court."

[1] In the instant case the plaintiff has offered considerable testimony of a character evidently not introduced in the New York case, which it is contended, completely discloses that the success of this Equalite is due *to the pleasing shape of its canopy and bowl.* This new evidence is supplied by a large number of witnesses familiar with the trade in various parts of the country. The names, places of residence, and occupations of these witnesses follow:

H. A. Stone, manager of the fixture department of the Northwestern Electric Equipment Company, of St. Paul, Minn., who has been connected with the lighting fixture industry for the past 14 years; his activities being confined principally to the state of Minnesota.

J. F. Ward, manager of the Northwestern Electric Equipment Company, of St. Paul, Minn.

William A. Hall, secretary of the Minnesota Chandelier Company, St. Paul, Minn., who has been connected with the lighting fixture business for 21 years.

M. J. Grady, manager of the Grady Fixture Manufacturing Company, Minneapolis, Minn., connected with the lighting fixture business for 7 years.

Edwin F. Guth, president of the St. Louis Brass Manufacturing Company, and connected with the electric lighting fixture business for over 17 years.

Charles M. Wempner, secretary of the St. Louis Brass Manufacturing Company, and connected with the fixture business for 27 years.

H. E. Murphy, illuminating engineer, of Boston, Mass., and associated with the lighting fixture business for about 12 years.

Elmer L. Evans, secretary and treasurer of O. R. Evans & Bro., Washington, D. C., connected with the lighting fixture business for 17 years.

James Bayard Kelley, manager of the fixture department of Frank H. Stewart Electric Company, of Philadelphia, Pa., connected with that company for 15 years.

T. H. Howard, president of the Phœnix Glass Company, of Pittsburgh, Pa., connected with that company for about 27 years.

E. C. Flanagan, of Pittsburgh, salesman for the Phœnix Glass Company, and connected with that company for 9 years; his activities being most pronounced in Western Pennsylvania, Ohio, Kentucky, and West Virginia.

A. H. Ebberts, an employé of the Phœnix Glass Company, of Pittsburgh, and connected with that company for the past 10 years.

Harold C. Dalton, proprietor of the Dalton Lighting Fixture Company, of Boston, Mass., and connected with the lighting fixture business for at least 16 years.

William F. Handel, manufacturer of lighting fixtures, of Hartford, Conn., and connected with the lighting fixture business for the past 16 years.

H. Bernard Jones, general manager of the Art Metal Manufacturing Company, of Chicago, Ill., and associated with the lighting fixture business for about 14 years.

All of these witnesses testify that they are very familiar with the Equalite, remember when it came upon the market, relate its reception, and recite the demand for it. Some of these witnesses are either competitors or employed by competitors of the plaintiff, but it is the unanimous opinion of all of them that this Equalite, the product of the patent in suit, impressed them as being exceptionally attractive. I quote at random from their descriptions of it:

"Handsome and beautiful;" "extremely attractive, because of its beauty and style;" "simple and beautiful lines;" "absolutely new;" "of very graceful appearance;" "indispensable to the trade for ornamental work;" "something different;" "a very good seller, on account of its unique design and graceful appearance, which other fixtures did not possess;" "so distinctive, beautiful, and graceful in design that it was immediately purchased, * * * and has met with very great success, and has been greatly admired by the purchasing public;" "the first fixture of this type ever seen, and have seen nothing approaching it in any way previous to seeing it;" "a very valuable and pleasing impression, and seemed to possess unusual beauty, caused by the grace and symmetry of its contour, particularly when illuminated;" "the fixture appealed by reason of its beautiful design;" "it received the most wonderful reception of any lighting fixture ever placed upon the market;" "a very wonderful lighting fixture, from the standpoint of beauty of design;" "it was the design alone which impressed;" "it seemed to be a working out of very graceful and beautiful lines in a very simple construction;" "at the time I first saw the Equalite, it was a new design and looked as if it was pretty attractive;" "I thought it would be a ready seller, purely by reason of its beauty of design, which I knew would attract all classes of buyers;" "it impressed me as a

wonderfully beautiful design, which would appeal to the buying public;" "I attribute its large sale to its beauty of design, for that is the main factor in the sale of any lighting unit;" "it impressed me as a very beautiful and attractive unit, as much as being very efficient."

It is clear from this overwhelming testimony that the design of this light, when it appeared upon the market, was absolutely new, and that it made an appeal to the observation, because it possessed a sense of uniqueness and character. The testimony also clearly establishes that an increased demand for the goods of the originator was caused and that the light had a very large sale.

The four tests laid down for determining the presence of invention in a design patent are all met—completely met. All of the witnesses, men of standing in the electric fixture business, testify that the design, viewed as a whole, was new; that it produced a pleasing impression on the æsthetic sense; that it imparted a sense of uniqueness and character; that it created an enlarged demand for the goods; and that it attained great popularity. The court cannot ignore this abundant testimony which apparently was lacking in the New York case.

[2] In view of the overwhelming mass of proof present in this case, it does not seem to me that it would be proper for this court to do otherwise than to determine that there was an invention.

With respect to anticipation, reference is made to three patents offered in evidence and marked Defendant's Exhibits F. G. and H.

One of them, the Pickhardt patent, No. 47,934, for which the application was filed May 10, 1915, was assigned to and became the property of the Phœnix Glass Company, of Pittsburgh, on October 5, 1915. The president and two employés of the Phœnix Glass Company, as has been noted above, have testified in the instant case. They agree that the Equalite is a competitive unit, and that it has been on the market longer than the Pickhardt, which was patented on October 5, 1915. It must not be overlooked that this testimony is from three persons who are connected with the manufacture and sale of the Pickhardt fixture.

The Raymond patent, No. 48,082, also a design for a lighting fixture, applied for June 9, 1915, and issued in November, 1915, of course did not anticipate the patent in suit. According to Mr. H. B. Jones, general manager of the Art Metal Manufacturing Company, of Chicago, the Equalite was the first upon the market; it being some time subsequent to the advent of the Equalite that the Raymond light first came out.

The Grant device, No. 45,629, patented April 21, 1914, cannot be regarded, it seems to me, as a lighting fixture at all. It is entitled "Lamp Shade or Reflector." While it may be true that the design of this Grant lamp shade resembles somewhat the design of the upper parts of the Raymond and Pickhardt fixtures, I am at a loss to comprehend how it could, from a design viewpoint, be considered to resemble in any degree the upper portion of the patent in suit.

It is satisfactorily established that the Equalite was first shipped from the factory on March 15, 1915. Not only is this testified to by Mr.

Bayley, the president of the plaintiff, and McAteer, its shipping clerk; but original records, which have every appearance of being authentic, are produced to corroborate their statements in this respect. The trade generally came to recognize the design of the patent in suit as the creation of the plaintiff, and as having been originated by that company, and it became popularly known as "Bayley's Equalite." The undisputed evidence is that this Equalite was put upon the market by the plaintiff long prior to the lighting fixture patents of Pickardt and Raymond referred to by the Circuit Court of Appeals in the Standard Case, supra. In view of the fact that the evidence presented by the record in the instant case absolutely and completely eliminates the patents upon which the Court of Appeals of the Second Circuit relied, and also supplies the proof which was there lacking, this court concludes that the patent in suit is valid.

The next question is: Was there an infringement by this defendant? There can be no question whatever but that the fixture sold by the defendant resembles almost in every minute detail the article covered by the patent in suit. Many of the expert witnesses of the plaintiff, men who have been connected with the electric light fixture business for many years, when shown the picture of the defendant's fixture and asked what it represented, stated that it was the "Equalite." A witness named Rutkin, called by defendant, attempted to deceive the court by stating that the defendant's exhibit "don't look anything like the shape in Bayley's 4,886." The fact is that they look so much alike that the defendant's witness Cohen, who, after pointing out what he regarded as differences between the two designs, testified as follows:

"Well, if he didn't have in mind the fixture that he had in his office, and he saw that other fixture hanging somewheres else, he may have thought it was the same. You cannot tell these things."

The fact is that there was so much resemblance between the two that the expert of the defendant had great difficulty in pointing out even minute differences between them.

[3] If there were a slight deviation in a line, which could be pointed out by measurements of an expert, but not detected by the observation of the general public, in view of the case of Mygatt v. Schaffer, 218 Fed. 833, 134 C. C. A. 521, that fact would not avoid infringement. In that case the court said:

"In the case at bar the defendant's device has a slightly lower neck or flatter bell than has the complainant's. But the defendant's reflector is the complainant's reflector; the slight change in the contour does not avoid infringement."

[4] It is established by evidence, and not successfully denied, that in the spring of 1917 the defendant was visited by the plaintiff's representative, who told him that he had a patent on an electric light fixture which the defendant was displaying for sale in his salesrooms. Eben F. Oliver, an electric engineer and associated with the lighting fixture industry for the past 22 years, testified:

That in the year 1917 he had the exclusive selling agency of the Equalite in Newark, N. J. That as a result of a conversation which he had with Barnes

and Ramirez, also selling agents of the plaintiff, early in the spring of 1917, he called at Krich's store in Newark, N. J., where he found displayed a lighting fixture resembling Bayley's patent. That he had a conversation with the defendant, showing him a photograph, which he relates as follows: "Mr. Krich, I am Mr. Oliver, of Bayley & Sons, and you are selling an infringement of Bayley's Equalite No. 4,886, and you are installing some in Seeger's cigar store on Broad street. That's the fixture, pointing right to it as it hung up there on the fixture rack." That Mr. Krich, replied, using profane language, which the witness refused to repeat, by asserting that he would conduct his business as he saw fit, and directing Oliver to get out of his store. That during this visit Oliver "picked up" a blotter showing the cut of the fixture which Krich was displaying for sale, which blotter has been introduced as Exhibit P-1.

The defendant testified that he never heard of the Equalite until the trial; never had it in his place; never had a call for it. He was asked by his attorney:

"Did you ever see this gentleman here, Mr. Oliver? A. I just remind myself that I did saw him * * * about two month ago, * * * and that's the first time I think I ever saw him in my life; I could swear that again."

He admits, however, that some one visited him in 1917 and said something to him about a patent on some unit; but he does not remember the name of the patent which was mentioned, and admits telling the man that he was going to run his own business the way he understood it ought to be run. He testified that the man showed him a picture of a fixture, and said he was a lawyer from the Bayley Company.

The defendant's demeanor was very unsatisfactory. He did not appear to be frank, but, on the contrary, was evasive in answering questions. Taking his testimony altogether, to put it mildly, I think it could reasonably be said that it was plain he was reluctant to testify to the truth. He admits, however, that after this man visited him in 1917 he continued to sell the fixtures complained of.

In view of the validity of this patent and the unquestionable infringement on the part of the defendant after notice to him, a decree will be entered in favor of the plaintiff. On the facts now at hand I do not feel inclined to award anything in excess of the actual damages sustained.

A decree in favor of the plaintiff will be entered.